**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :         PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| GARRICK REED | : |
| | : |
| Appellant | : No. 1247 WDA 2025 |

Appeal from the Judgment of Sentence Entered September 29, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0005804-2024

BEFORE:  LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY LANE, J.:              **FILED: July 9, 2026**

Garrick Reed ("Reed") appeals from the judgment of sentence imposed following his convictions for driving under the influence ("DUI")—general impairment and reckless driving.[1]  We affirm.

The trial court summarized the relevant factual history of this matter as follows:

> On June [26], 2024, Officer James Ilgenfritz ("Officer Ilgenfritz") of the Homestead Borough Police Department encountered a vehicle that was being driven by . . . Reed, the defendant in this case.  Officer Ilgenfritz was seated in his police vehicle in the parking lane of a road near Frick Park when he heard the sound of a vehicle accelerating to approximately [sixty] miles per hour from the stop sign behind him.  Officer Ilgenfritz watched in his side view mirror as a Jeep Cherokee came at him, swerving at the last second to avoid a collision.

---

[1] **See** 75 Pa.C.S.A. §§ 3802(a)(1), 3736(a).

Officer Ilgenfritz proceeded to follow the vehicle and was able to eventually stop it in the next block. He approached the vehicle and made contact with . . . Reed, the driver and only occupant. This encounter was captured on body worn camera. . . . Reed immediately appeared to be irritated, gesturing at every request made of him. Officer Ilgenfritz observed . . . Reed to have glassy and bloodshot eyes. Additionally, a strong odor of alcohol emanated from . . . Reed as he spoke.

Officer Ilgenfritz attempted to get information from . . . Reed, including the correct spelling of his last name. This request appeared to infuriate . . . Reed, who, rather than spell his name (to determine whether his last name was spelled Reed, Reid, Reade, or some other variant), simply yelled his last name repeatedly. He eventually ceased cooperating at all with the officer.

Officer Ilgenfritz asked . . . Reed to exit the vehicle. After multiple requests, and after the officer drew and pointed his taser at him, . . . Reed exited the vehicle. Upon his exit, the officer described . . . Reed's behavior towards him as very threatening. . . . Reed took an aggressive, fighting stance, and was almost immediately tased by the officer. [Several police officers arrived on the scene to assist in the traffic stop.] Video showed . . . Reed continuing to threaten [to kill the police officers] and hurl racial and sexual slurs at [them] until he was taken from the scene.

Due to the combative reaction of . . . Reed, no field sobriety tests were conducted.

Officer Ilgenfritz is a [twenty four] year veteran police officer who conducted over 100 DUI investigations at the time of the incident. Based on his training, education, and experience, his observations of [Reed's] driving as well as . . . Reed's glassy and bloodshot eyes, the odor of alcohol coming from him as he spoke, and his aggressive and threatening behavior, the officer formed the opinion that . . . Reed was under the influence of alcohol to a degree that rendered him incapable of safely operating a motor vehicle.

Trial Court Opinion, 1/14/26, at 1-2.

The Commonwealth charged Reed with, *inter alia*, the above listed offenses. Reed filed a motion to suppress all evidence obtained from the vehicle stop, arguing that Officer Ilgenfritz unlawfully arrested Reed without probable cause. The trial court held a hearing on Reed's motion to suppress. At the hearing, Officer Ilgenfritz testified consistently with the above summary. He further testified that he was unable to administer a field sobriety test due to Reed's "aggressive nature." N.T., 5/2/25, at 11. In addition, the Commonwealth presented footage of the encounter from Officer Ilgenfritz's body worn camera. **See** Commonwealth Exhibit 1. The trial court held the matter under advisement and ultimately denied the suppression motion.

The matter proceeded to a non-jury trial on September 5, 2025. The trial court incorporated Officer Ilgenfritz's testimony and body worn camera footage from the suppression hearing into the record by reference. Reed did not testify in his own defense. At the conclusion of trial, the court found Reed guilty of DUI—general impairment and reckless driving.[2] On September 29,

_____

[2] At trial, Police Officer John Betarie testified that he transported Reed to the hospital, read Reed the required warnings from the Pennsylvania Department of Transportation DL-26 form, and that Reed orally consented to a blood draw to test his blood alcohol content ("BAC"). However, Reed signed the form on the line where a police officer would sign if an offender refused the blood draw. **See** N.T., 9/5/25, at 4-8. A toxicologist thereafter testified that he analyzed Reed's blood sample and determined that his BAC was 0.214 percent. **See id**. at 13-17. At the conclusion of trial, the court made a finding that Reed did not consent to the blood draw. **See id**. at 26. Thus, the trial court did not consider Reed's BAC when determining his guilt under section 3802(a)(1). We note that an offender who refuses "to submit to a blood or breath test to determine alcohol level can still be charged with and convicted under [section]
*(Footnote Continued Next Page)*

2025, with respect to Reed's DUI conviction, the trial court imposed a sentence of six months' probation, a fine of $300, and ordered the completion of a safe driving class. The court further imposed a fine of $200 on his reckless driving conviction. Reed filed a timely notice of appeal and both he and the trial court complied with the requirements of Pa.R.A.P. 1925.

Reed raises the following issues for our review:

1. Was the evidence presented at trial insufficient as a matter of law to sustain . . . Reed's conviction for [DUI] where the Commonwealth failed to prove that . . . Reed was under the influence at the time he drove his vehicle?

2. Was the evidence presented at trial insufficient as a matter of law to sustain . . . Reed's conviction for reckless driving where the Commonwealth failed to prove that . . . Reed's driving demonstrated a conscious disregard of a substantial and unjustifiable risk of injury to persons or property?

Reed's Brief at 3 (unnecessary capitalization omitted).

Both of Reed's appellate issues challenge the sufficiency of the evidence with respect to his convictions. A challenge to the sufficiency of the evidence "presents a question of law, for which our standard of review is *de novo*, and our scope of review is plenary." **Commonwealth v. Greene**, 340 A.3d 324, 332 (Pa. Super. 2025) (citation omitted).

When reviewing sufficiency challenges, we adhere to the following:

_____

3802(a)(1) if the Commonwealth can prove that he or she drove after imbibing a sufficient amount of alcohol such that he or she was rendered incapable of safely driving." **Commonwealth v. Griffith**, 32 A.3d 1231, 1239 (Pa. 2011).

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, [there] is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Nestor*, 314 A.3d 863, 873 (Pa. Super. 2024) (citation omitted).

In his first issue, Reed challenges the sufficiency of the evidence with respect to his DUI conviction. The relevant DUI statute provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1). To sustain a conviction under this statute, the Commonwealth must prove:

that alcohol has substantially impaired the normal mental and physical faculties required to operate the vehicle safely; substantial impairment means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. The meaning of substantial impairment is not limited to some extreme condition

- 5 -

of disability. Section 3802(a)(1), like its predecessor, is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving.

*Commonwealth v. Clemens*, 242 A.3d 659, 665 (Pa. Super. 2020) (citation omitted).

With respect to the types of evidence the Commonwealth may present at trial, our Supreme Court has explained:

> The types of evidence the Commonwealth may proffer to prove its case include but are not limited, to the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol [set forth in subsections 3802(a)(2), (b), and (c)] does not apply. Blood alcohol level is admissible in a subsection 3802(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3801(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level.

*Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009).

Reed argues that because the trial court "made a finding of fact that he refused to consent to having his blood drawn, . . . the results of the blood draw were inadmissible at trial." Reed's Brief at 11. Reed maintains that, given this ruling by the trial court, "the only evidence of intoxication . . . is

Officer Ilgenfritz's observations at the time of the traffic stop." *Id*. at 11-12. In this regard, Reed asserts that the officer's observations, without more, were insufficient to support his DUI conviction. *See id*. at 12. Reed avers that Officer Ilgenfritz testified that Reed "had glassy eyes and emitted the odor of alcohol," but that the officer "had never encountered . . . Reed before, meaning he was unfamiliar with the ordinary appearance of . . . Reed's eyes." *Id*. He further argues that while Officer Ilgenfritz testified that "Reed was irritable and threatening[, the officer] failed to provide any specifics." *Id*. Finally, Reed contends that because the officer tased Reed soon after he exited the vehicle, he did not have the opportunity to complete a field sobriety test. *Id*.

The trial court considered Reed's sufficiency challenge with respect to his DUI conviction and found that it lacked merit. The court reasoned:

> The evidence at trial was credible and showed that . . . Reed operated a vehicle that was traveling at excessive speed and nearly struck a parked vehicle where Officer Ilgenfritz was seated. The officer credibly testified that he heard the vehicle accelerate from a stop sign behind him, was traveling at approximately [sixty] miles per hour, and he saw that it nearly crashed into him. The collision was avoided only because . . . Reed swerved at the last possible second. Contrary to the assertion made by the defense, an accident is not required before a finding of unsafe driving can be made.
>
> The evidence also included the officer's detection of a strong odor of alcohol coming from . . . Reed as he spoke and [he] observed the driver to have glassy and bloodshot eyes. Additionally, . . . Reed's behavior during the encounter was considered. He was immediately and irrationally infuriated with a simple line of questioning to gather basic information. His erratic

and threatening behavior continued throughout the stop, even after the officer deployed his taser against him.

Trial Court Opinion, 1/14/26, at 5 (unnecessary capitalization omitted).

Viewing the evidence in the light most favorable to the Commonwealth, we determine the evidence was sufficient for the trial court to find Reed guilty of DUI on the basis that he was under the influence of alcohol to a degree which impaired his ability to safely drive, operate, or be in actual control of the movement of his vehicle. Despite Reed's assertions otherwise, the Commonwealth presented substantial evidence of his impairment, including Officer Ilgenfritz's observations, which alone were sufficient to support Reed's DUI conviction. *See Segida*, 985 A.2d at 879 (explaining that the types of evidence that the Commonwealth may proffer to prove impairment include: offender's actions and behavior, manner of driving, demeanor, physical appearance—particularly bloodshot eyes and other physical signs of intoxication, and odor of alcohol). Specifically, Officer Ilgenfritz testified that he both heard and saw Reed's vehicle accelerate from a stop sign at a high rate of speed (*i.e.*, sixty miles per hour) and nearly collide with his parked patrol vehicle before swerving at the very last second. *See* N.T., 5/2/25, at 6, 10. After he initiated a vehicle stop, Officer Ilgenfritz smelled a strong odor of alcohol emanating from Reed when he spoke, and observed that Reed's eyes were glassy and bloodshot. *See id*. at 7-8. Reed was uncooperative and hostile during the traffic stop, refusing to spell his last name and ignoring Officer Ilgenfritz's repeated orders to exit the vehicle. *See id*. at 9-10, 17.

Once Reed exited the vehicle, he immediately assumed an aggressive "fighting stance" and Officer Ilgenfritz had to use the taser to subdue him. *Id*. at 11. After he was in handcuffs, Reed repeatedly threatened to kill the police officers, yelling obscenities and homophobic slurs at them. *See* Commonwealth Exhibit 1 (body worn camera footage). Due to Reed's combative behavior, police were unable to administer any field sobriety tests. *See* N.T., 5/2/25, at 11. We conclude that the evidence of Reed's erratic driving, belligerent demeanor, strong odor of alcohol, and glassy and bloodshot eyes, was sufficient for the trial court to find Reed guilty of DUI. Accordingly, no relief is due on his first issue.

In his second issue, Reed challenges the sufficiency of the evidence with respect to his reckless driving conviction. The relevant reckless driving statute provides: "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." 75 Pa.C.S.A. § 3736(a). To satisfy the elements of reckless driving, the Commonwealth must prove that the offender's driving not only "grossly deviate[d] from ordinary prudence but also create[d] a substantial risk that property damage or personal injury will follow." *Commonwealth v Greenberg*, 885 A.2d 1025, 1029-30 (Pa. Super. 2005). This Court has explained that the *mens rea* necessary to support a reckless driving conviction

> is a requirement that [the] Appellant drove in such a manner that there existed a substantial risk that injury would result from his driving, *i.e.*, a high probability that a motor vehicle accident would result from driving in that manner, that he was aware of that risk

and yet continued to drive in such a manner, in essence, callously disregarding the risk he was creating by his own reckless driving.

***Commonwealth v. Bullick***, 830 A.2d 998, 1003 (Pa. Super. 2003).

Importantly, driving under the influence of alcohol "does not establish recklessness *per se*; there must be other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury that is consciously disregarded." ***Commonwealth v. Jeter***, 937 A.2d 466, 468 (Pa. Super. 2007) (citation omitted). "Undoubtedly, there exists a level of intoxication that renders a person so incapable of safe driving that the probability of injury or death would rise high enough to satisfy the willful and wanton recklessness standard." ***Bullick***, 830 A.3d at 1004. In addition, "one can drive in such a reckless manner that one must be deemed aware of the fact that he is creating a substantial risk of causing a motor vehicle collision." ***Jeter***, 937 A.2d at 468 (citation and brackets omitted).

Reed argues that the Commonwealth did not present any evidence that he "consciously disregarded a substantial risk of injury created by his driving." Reed's Brief at 14. In support, Reed points to Officer Ilgenfritz's testimony "that . . . Reed ***avoided*** colliding with his police vehicle, thus alleviating any risk of injury." ***Id***. (emphasis in original). He further argues that the Commonwealth accused Reed of speeding but "failed to produce any evidence of the speed limit on the stretch of road in question." ***Id***. Reed avers that evidence of his "supposed intoxication" was insufficient to support his

- 10 -

conviction for reckless driving because his "driving in the instant case created no [. . .] peril" resulting from actual reckless driving or conduct. *Id*.

The trial court considered Reed's challenge to the sufficiency of the evidence supporting his reckless driving conviction and found it meritless, reasoning:

> . . . Reed's driving clearly satisfied [the Commonwealth's] burden. In addition to speeding at approximately [sixty] miles per hour, he operated his vehicle in such a manner that a crash was avoided only by a last second maneuver. His driving demonstrated a willful or wanton disregard for the safety of persons or property.

Trial Court Opinion, 1/14/26, at 7.

After careful review, we conclude that the evidence was sufficient for the trial court to find Reed guilty of reckless driving. In addition to the signs of intoxication that Reed exhibited during the traffic stop, Officer Ilgenfritz observed Reed's vehicle accelerating rapidly from a stop sign and reach a speed of approximately sixty miles per hour. *See* N.T., 5/2/25, at 6-7, 10. The officer then observed Reed's vehicle careen out of his lane of traffic and into the parking lane, nearly striking Officer Ilgenfritz's parked patrol car. *See id*. at 6. After swerving at the last second to avoid the collision, Reed sped away. *See id*. The fact that Reed narrowly avoided a collision caused by his own "willful and wanton disregard for the safety of persons or property" does not negate his recklessness. *See* 75 Pa.C.S.A. § 3736. Indeed, nearly hitting a parked car and then speeding away is evidence that Reed was aware that he was driving in a reckless manner, that he "creat[ed] a substantial risk of

- 11 -

causing a motor vehicle collision," and chose to continue driving anyway. *Jeter*, 937 A.2d at 468. Thus, the Commonwealth presented not just evidence that Reed was driving under the influence, but also "other tangible indicia of unsafe driving to a degree that create[d] a substantial risk of injury which [was] consciously disregarded." *Id*. We therefore conclude that the evidence was sufficient to support Reed's conviction for reckless driving. Accordingly, no relief is due on Reed's second issue.

For the foregoing reasons, we conclude that Reed's claims do not merit relief. We thus affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

7/9/2026